FILED
IN OPEN COURT

OCT 2 2 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:10cr402 |
| | ) | |
| GLENN DUFFIE SHRIVER, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, GLENN DUFFIE SHRIVER, agree that had this matter proceeded to trial the United States would have proved the following facts beyond a reasonable doubt:

1. SHRIVER was an undergraduate student majoring in international relations at Grand Valley State University in Michigan.  During his junior year, from August 2002 until May 2003, he attended a study abroad program at East China Normal University in Shanghai, People's Republic of China (PRC).  SHRIVER developed a strong interest in Chinese culture and considerable proficiency in the Chinese Mandarin language.  After graduating from college in 2004, SHRIVER returned to the PRC to continue his language studies and to seek work.

2. In or around October 2004, SHRIVER was living in Shanghai when he responded to an advertisement in English offering to pay persons with a background in East Asian studies to write a political paper.  A woman named "Amanda" contacted him, met with him in person several times, and then paid him $120 for the paper.  The subject of the requested paper was U.S.-PRC relations regarding North Korea and Taiwan.  A few months later, "Amanda" communicated with SHRIVER and told him the paper was good.  She asked if he would be

interested in meeting some other people, and SHRIVER agreed to do so. Eventually, "Amanda" introduced him to "Mr. Wu" and "Mr. Tang."

3. During his various meetings with these three individuals, the conversation focused on developing a "friendship" with SHRIVER. They asked him what type of work he wanted to do and expressed particular interest in whether he planned on seeking a job with a U.S. government agency. If so, they said, "we can be close friends." They asked if he had ever thought about working for the Department of State or CIA and suggested "that would be pretty good." From the nature of these discussions, SHRIVER realized the three individuals were PRC intelligence officers. At one meeting, SHRIVER asked the intelligence officers, "what exactly do you guys want?" They responded, "if it's possible, we want you to get us some secrets or classified information." SHRIVER later admitted to the FBI, "I had already known that, I just wanted to hear them say it." At the suggestion of the PRC intelligence officers, SHRIVER agreed to apply for positions in U.S. intelligence agencies or law enforcement organizations.

4. SHRIVER first attempted to gain employment as a U.S. Foreign Service Officer with the Department of State. On April 23, 2005, he completed the Foreign Service exam in Shanghai. SHRIVER failed the Foreign Service exam, but he received $10,000 in 2005 from the PRC intelligence officers for his "friendship." A year later, on April 8, 2006, SHRIVER again attempted to pass the Foreign Service exam but failed. Nevertheless, the PRC intelligence officers paid SHRIVER $20,000 for his efforts that year.

5. On June 20, 2007, SHRIVER completed an online application for employment with the CIA. He applied for a position in the National Clandestine Service, the division responsible for conducting clandestine intelligence operations abroad. Several months later, on September 11, 2007, he flew from his home in Los Angeles to Shanghai, PRC. During his two week visit to

the PRC, SHRIVER met with the PRC intelligence officers at least five times.  SHRIVER

informed the intelligence officers that he had applied to the CIA and requested the intelligence

officers pay him $40,000.   At a subsequent meeting, the intelligence officers delivered $40,000

to SHRIVER.  As with the previous payments of $10,000 and $20,000, SHRIVER received the

payment of $40,000 in cash (U.S. currency), which he then smuggled through U.S. Customs on

his return to the United States.

     6.  On December 18, 2009, SHRIVER received notice that he was to report to

Washington, D.C., for final employment processing activities with the CIA scheduled for late

May 2010.  On December 31, 2009, SHRIVER communicated with "Amanda" in response to her

earlier request that he come to the PRC and meet her in Shanghai or Hong Kong.  SHRIVER told

"Amanda" the following:

> . . . Things are going well here.  I am making some progress for us.
> But right now is a bad time for me to come visit.  Maybe you can
> wait six months.  In six months I will have good news. . . .

SHRIVER was referring to his "progress" in obtaining a position with the CIA.  He said "right

now is a bad time to visit" because he knew his travel to the PRC could raise suspicion with

federal agents conducting his background investigation.  Finally, SHRIVER hoped to be able to

convey to "Amanda" in six months the "good news" that he had successfully completed the final

CIA employment processing actions.

     7.  On February 11, 2010, SHRIVER made material false statements on the

Questionnaire for National Security Positions required for employment with the CIA.  In the

section on foreign government contacts, he falsely represented that he had not had any contact

with a foreign government or its representative during the last seven years.  Also, in the section

on foreign travel, he deliberately omitted his trip to the PRC in September 2007, during which he received the $40,000 from the PRC intelligence officers for applying to the CIA.

8.  Between June 7 and June 14, 2010, SHRIVER made material false statements during a series of final security screening interviews at a CIA location within the Eastern District of Virginia.  He falsely represented that he had never been approached by a foreign intelligence service, that he had never been affiliated with a foreign intelligence service, and that he had never accepted money from a foreign intelligence service.

9.  SHRIVER willfully made each of the false statements to conceal his illicit relationship with the PRC intelligence officers.  In fact, SHRIVER met in person with one or more of the intelligence officers approximately ten times in 2004, five times in 2006, and five times in 2007. Furthermore, he communicated with "Amanda," his principal contact and handler, on a regular, almost monthly basis for years.

10.  As part of his conspiracy with the PRC intelligence officers, SHRIVER knew that his ultimate objective was to obtain a position with a federal department or agency that would afford him access to classified national defense information.  When he obtained such a position, SHRIVER knew that his agreement with the PRC intelligence officers required him to transmit classified national defense documents or information to the intelligence officers who, in turn, would provide him with continuing payments of significant amounts of money.

11.  SHRIVER's actions in forming the conspiracy with the PRC intelligence officers and in furthering the objectives of that conspiracy were in all respects knowing and deliberate and were not committed by accident, mistake, or other innocent reason.

12.  This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States.  It does not include each and every fact known to

the defendant or the government, and it is not intended to be a full enumeration of all the facts surrounding the defendant's case.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: _____

Stephen M. Campbell
Assistant United States Attorney

_____

Brandon L. Van Grack
Trial Attorney
U. S. Department of Justice

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Glenn Duffie Shriver, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____

Glenn Duffie Shriver
Defendant

I am Glenn Duffie Shriver's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____

G. Allen Dale
Counsel for Defendant