```
                                                                    1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




--------------------------------:
                                :
UNITED STATES OF AMERICA        :
                                :
                                :
     -vs-                       :      Case No. 1:10-cr-402
                                :
                                :
GLENN D. SHRIVER,               :
               Defendant.       :
                                :
--------------------------------:




                          SENTENCING HEARING

                          January 21, 2011

                    Before:  Liam O'Grady, USDC Judge




APPEARANCES:

Stephen M. Campbell, Counsel for the United States

G. Allen Dale and Claire M. Clark, Counsel for the Defendant

The Defendant, Glenn D. Shriver, in person




                                  Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626
```

2

1  THE CLERK: Criminal case number 1:10-cr-402, the
2  United States of America versus Glenn Duffie Shriver.
3  MR. CAMPBELL: Good morning, Your Honor. Stephen
4  Campbell on behalf of the United States.
5  THE COURT: Good morning, Mr. Campbell.
6  MR. DALE: Good morning, Claire Clark and Allen Dale
7  on behalf of Mr. Shriver.
8  THE COURT: All right. Good morning to both of you.
9  Good morning, Mr. Shriver.
10 THE DEFENDANT: Good morning, Your Honor.
11 THE COURT: This comes on for sentencing. Are the
12 parties ready to proceed?
13 MR. CAMPBELL: The Government is, Your Honor.
14 MR. DALE: Yes, Your Honor.
15 THE COURT: All right. Any corrections, additions
16 that you want to make to the report?
17 MR. CAMPBELL: Not for the Government, Your Honor.
18 THE COURT: All right, thank you.
19 MR. DALE: Not for the defendant, Your Honor. We
20 had some initial objections through Probation, but they have
21 all been resolved.
22 THE COURT: All right, I am happy to hear that.
23 Thank you, Mr. Dale.
24 Mr. Shriver, have you had the opportunity to go over
25 the presentence report?

3

1  THE DEFENDANT: Yes, I have, Your Honor.
2  THE COURT: And did you consult with your counsel
3  about it?
4  THE DEFENDANT: Yes, we have.
5  THE COURT: And any corrections, additions,
6  deletions you want made to the report at this time?
7  THE DEFENDANT: I think there were a few editing
8  typos, but nothing in the meat of the document.
9  THE COURT: All right, then I will order the report
10 filed without amendment.
11  The Adjusted Offense Level is a 24 under the
12 Guideline worksheet. Mr. Shriver has received the full three
13 points for acceptance of responsibility. Leaving an Offense
14 Level total of 21. A Criminal History Category I, he has no
15 prior criminal record. And this results in a Guideline range
16 of 37 to 46 months.
17  This is an 11(c)(1)(C) plea. And I have read the
18 position papers of the parties.
19  Mr. Campbell, I will hear anything else you would
20 like to say at this time.
21  MR. CAMPBELL: Thank you, Your Honor.
22  Your Honor, by engaging in a conspiracy to
23 communicate national defense information to a foreign power,
24 Mr. Shriver betrayed the United States. Not only did he
25 betray this country in the general sense, he also betrayed the

1   family and the community that raised him.  And he ultimately
2   betrayed his own future.
3           With an educational degree in international
4   relations and considerable proficiency in foreign languages,
5   Mr. Shriver once had the prospect and the potential to serve
6   the United States in a position of responsibility, perhaps as
7   a foreign service officer in the Department of State and
8   perhaps as an intelligence officer in the CIA.
9           Instead, when he actually applied for these
10  positions Mr. Shriver did so as an agent of a foreign power,
11  recruited to commit espionage against his own country, the
12  United States.
13          Fortunately, Your Honor, Mr. Shriver never succeeded
14  in gaining an entry into the intelligence community.  In a
15  highly sensitive joint counterintelligence investigation, the
16  CIA and the FBI quickly discovered this conspiracy before any
17  damage could be done.  Thanks to the effective partnership of
18  the CIA and the FBI, Mr. Shriver never even came close to
19  penetrating an intelligence agency and never even came close
20  to having the opportunity to disclose our national security
21  secrets.
22          Despite his failure and his effort to accomplish the
23  objectives of that conspiracy, Mr. Shriver's recruitment as an
24  intelligence agent for a foreign intelligence service is a
25  serious offense and represented a serious threat to the United

5

1  States.
2          Having stated that, Your Honor, the Government
3  recognizes that there are two significant potential mitigating
4  factors in Mr. Shriver's case.  First of all, at the age of 24
5  Mr. Shriver was a relatively young man when he was targeted
6  and recruited by the foreign intelligence service.
7          Second, as I have stated, Mr. Shriver in fact never
8  had access to classified information and he never in fact,
9  therefore, actually passed any classified information.
10         Also, I would note, Your Honor, at this point in a
11 series of recent debriefings by the FBI, Mr. Shriver has
12 provided full and complete cooperation according to those
13 agents as required by our plea agreement.
14         So, then overall, Your Honor, considering the
15 nature, the serious nature of this national security offense,
16 considering the characteristics and the history of this
17 particular defendant, and always, as the Court is well aware,
18 of the Government's concern for the potential disclosure
19 deliberately or inadvertently during the course of litigation
20 and at trial even under the protections of CIPA, considering
21 all these factors, Your Honor, the Government concluded that
22 the just and appropriate resolution of this case was a plea
23 agreement under Rule 11(c)(1)(C) which provided for a
24 mandatory four-year sentence for the defendant.
25         Finally, Your Honor, the Government would like to

1   recognize and thank the Court, our appreciation for your
2   realizing the particularly sensitive nature of these types of
3   national security investigations, and for allowing the parties
4   to proceed under Rule 11(c)(1)(C).
5           Thank you, Your Honor.
6           THE COURT:  All right.  Thank you, Mr. Campbell.
7           Mr. Dale.
8           MR. DALE:  Thank you, Your Honor.
9           Your Honor, as this Court and Mr. Campbell both
10  noted, this is an 11(c)(1)(C) plea.  We agreed to a sentence
11  of 48 months.
12          Even with that, we submitted a sentencing memorandum
13  mainly because we thought the Court and the public who do
14  follow these type of cases should know a little bit about this
15  man.
16          In this day and age with all the liberties we've
17  sacrificed post-911, any case which mentions in the slightest
18  the word "espionage" brings scorn upon those who have been
19  charged.
20          We would simply ask the Court and all those who
21  follow this case to set aside that scorn for this man, for
22  Glenn Shriver, and see him as the person he truly is.  And
23  that is, aside from this case, a good man with a good heart
24  who has done a lot of good in the past and continues to do
25  good for all those who know him and all those who have the

7

1  pleasure of being around him.

2          The letters we attached to our submission, Your
3  Honor, offer proof of his compassion, his kindness, diligence
4  at his work and, ironically, his love for his country.

5          To all those who would read this case, I would say
6  to them that know that regardless of his actions in this case,
7  as Mr. Campbell has acknowledged, the safety and security of
8  the United States was never at risk.

9          There are always lessons to be learned when people
10 make mistake such as this.  This is more than a mistake,
11 obviously, it's a criminal action.  I would hope that if there
12 are lessons learned here, and Mr. Campbell touched upon this
13 briefly, it would be lessons to young people who travel abroad
14 to know that if you appear vulnerable, you will be sought out.
15 You will be sought out by people who are trained, who know
16 what they are doing, just as our agents know what they are
17 doing.

18         And that young people should know that the bad guys,
19 if you call them that, will do it.  You should be ever
20 vigilant.  Be wary of those who try to befriend you.  And most
21 importantly, if you are contacted, to immediately go to your
22 own government and let them know you have been contacted so
23 that these foreign nationals who are so very good at what they
24 do in turning people don't end up putting you in a position
25 where you are like Mr. Shriver and appearing before this Court

8

1  facing and will receive four years in prison.

2  On a personal note, I would say too, I thank the
3  Court for allowing us to proceed in this fashion, and
4  certainly giving us the time that it took to reach this
5  conclusion.

6  These are always difficult cases because as an
7  attorney you are supposed to always be first an attorney, but
8  you are always first an American. And espionage cases are
9  difficult, they have always been difficult for me. This one
10 has been a lot easier. It has been a lot easier because the
11 agents in this case and Mr. Campbell, as he recognized today,
12 recognize this case for what it truly is.

13 I have also had a good client. A client who I
14 believe in his heart of hearts is a loyal American. He is a
15 person who has been easy to communicate with. He has been a
16 person who has not offered any resistance. And he has been a
17 person who I don't view has really turned against his country.

18 But he is here today facing sentencing. He will get
19 past this. He will be back on the streets again as a good
20 American doing good for this country, and he will serve his
21 country well.

22 I would ask the Court to adopt the sentencing
23 recommendation, the 11(c)(1)(C) 48 months. And I would ask
24 that the Court recommend that he serve his time at Milan,
25 Michigan, which is close to his mom.

9

1       And if the Court would allow me, Ms. Chavez has
2  traveled here, his mom, from Michigan today to be here for her
3  son's sentencing.
4       THE COURT:  Good morning, ma'am.
5       Tell me the name of the facility.
6       MR. DALE:  Milan, Michigan.
7       THE COURT:  Right.  All right.  Thank you, Mr. Dale.
8       Mr. Shriver, please come to the podium.
9       THE DEFENDANT:  Yes, Your Honor.
10      THE COURT:  This is your opportunity to tell me
11 anything you would like to before I sentence you.
12      THE DEFENDANT:  Okay.  Thank you very much, Your
13 Honor.
14      As I stand before you today, I think I'm overwhelmed
15 with primarily two emotions.  The first is quite obvious,
16 regret for my actions.  I have let down my family, my fiancée,
17 and I have let down myself.
18      Mine was to be a life of service.  I think Mr.
19 Campbell summed it up very nicely.  With the skills that I
20 have acquired, I could have been very valuable.  And that was
21 originally my plan.  I knew early on that this country was
22 going to need people who knew a multitude of languages, was
23 able to work in a multicultural workforce.  And that's what I
24 set out to achieve, and I did.
25      Somewhere along the way I climbed into bed with the

10

1  wrong people.  It's a mistake I will regret for the rest of my
2  life.
3          THE COURT:  What was going on?  You did it
4  repeatedly.  That's the thing that is so troubling about this
5  case.  And actually, you know, I have dealt with a series of
6  espionage cases myself over the years as a defense attorney
7  and as a judge and as a prosecutor.  And what's so frightening
8  is that someone like yourself, who is bright, chooses not to
9  do it once, but chooses to take money repeatedly over an
10 extended period of time.
11         What was going on?
12         THE DEFENDANT:  Well, I am not sure at how much
13 liberty I am to talk about some of the things in this case.
14         THE COURT:  No, I certainly understand.
15         THE DEFENDANT:  One thing I would like to point out
16 though, and I am not trying to assuage guilt, I am not trying
17 to put off anything, it is clearly stated in the statement of
18 facts that although I met with these people 20 times or more,
19 only one time was I told that they would like secrets.
20         There were numerous other times where I was told,
21 hey, we just want to be friends.  You know, this is nothing
22 illegal, you know.  And it started out fairly innocuous.  As I
23 mentioned in my briefing, the first set of money was more
24 presented as like a living stipend.  Oh, you know, we really
25 want to help young people here in China.  You know, we realize

1  sometimes you're far from home and the costs can be quite a
2  bit, so here is just a little bit to help you out.  And then
3  it kind of spiralled out of control.
4           I have also stated that there was never one single
5  epiphany where I was like, wow, this is what these guys are
6  doing.  It was kind of a gradual realization.  And by the time
7  I came to that full realization, I think I was just too far
8  into it.
9           And, you know, looking back, I mean, it was a
10 terrible decision, but I think I was motivated by greed.  I
11 mean, you know, large stacks of money in front of me.  And
12 them saying, hey, don't worry, you don't have to do anything
13 for it, this is just, you know.
14          THE COURT:  All right.  I am sorry, I interrupted
15 you.
16          THE DEFENDANT:  No, please, if you have any
17 questions, feel free, Your Honor.
18          THE COURT:  No, that's it.
19          THE DEFENDANT:  And so, as I was saying, I have a
20 lot of regret for not only what I have done, but also what
21 could have been.
22          But the second emotion I feel, and perhaps not so
23 obviously, is I feel one of relief.  I cannot tell you what
24 it's like to carry a dark secret like this for so many years.
25 I mean, I wasn't able to tell my family, my friends, my

12

1   fiancée.  That type of thing eats at you.

2   And I would like to say that there were certain
3   things I tried to do to put this behind me, but I have come to
4   the realization that a man cannot create a new life for
5   himself until he has atoned for the mistakes of his past.  And
6   that's what this is about today, atonement.

7   Soon you will pass sentence on me, and I want to
8   assure you that whatever sentence you pass, I will serve that
9   sentence with conduct that is no less than exemplary.

10  And when I finish with that sentence, I will move
11  on.  I will rejoin my family, I will marry my fiancée, and I
12  will live a good life.  And that's where the relief is coming
13  from.  I know that I still have a good life ahead of me, and
14  that's what I'm seeing.

15  So, forgive me, I don't want to drag on too long.  I
16  will just conclude in saying this.  I have a great sense of
17  regret.  The betrayal of my country, the betrayal of the trust
18  of my family, the betrayal of myself, but I know that I have
19  good a life, and that is where my relief is coming from.

20  Thank you, Your Honor.

21  THE COURT:  All right.  Thank you, Mr. Shriver.
22  Stay there.

23  THE DEFENDANT:  Yes, Your Honor.

24  THE COURT:  You know, I trust-- You're a young man.
25  As Mr. Dale indicated, the pleading that he filed told me a

1   significant amount about the opportunity you have going
2   forward to be a productive member of your community. I hope
3   you wake up every day and you say, this is another day where I
4   can make a contribution to my community and put the past
5   behind me and live a good, law-abiding life.
6           You have put a great impediment in the way of doing
7   that, but you can overcome it if you have the will to do that.
8   And I hope that you with the support of your fiancée and your
9   family are able to collectively do that.
10          As you know, this is a binding plea agreement. I
11  accepted it many months ago after the Government and your
12  counsel had an opportunity to review the facts of the case, to
13  speak with law enforcement.
14          And I am comforted, these cases are handled by
15  seasoned professional, thoughtful people on both sides of the
16  table, it give me a great deal of comfort when I get one of
17  these cases and get a request for a (c) plea, which is very
18  unusual, that they do have people with excellent judgment
19  working on these cases.
20          So, I had confidence that I would be able to accept
21  that agreement today, and I do accept it. I think it's a very
22  reasonable disposition given the facts of this case and the
23  unique facts of every one of these cases.
24          You have betrayed your country. Those are tough
25  words to hear, let alone admit to. And they require a

14

1  sentence be imposed, and a serious sentence, because of the
2  nature of the offense and the deterrence to others and the
3  harm you committed.
4        On the other hand, because of your youth and, as Mr.
5  Campbell said, the timing of this and the failure to harm the
6  Government, that sentence has to be tempered.  And also the
7  nature of the offense and the exposure of classified
8  information.
9        So, I think that 48-month sentence is appropriate
10 and I will abide by it.
11       I am going to sentence you to 48 months of
12 incarceration.  To be followed by two years of supervised
13 release.  A special assessment of $100.
14       Special conditions of your supervised release, that
15 you undergo substance abuse testing and treatment to determine
16 if counseling is necessary in that area.
17       That you agree to give up any financial records that
18 the Probation Office requests, and fill out any disclosure
19 forms necessary for them to be able to monitor your finances.
20       I will not impose a fine or costs of incarceration
21 because I find that you are unable to pay them.
22       I will recommend that you be designated to a
23 facility close to Milan, Michigan so that you can be near your
24 family.
25       Anything else this morning?

```
                                                                    15
 1              MR. CAMPBELL:  Not for the Government, Your Honor.
 2              THE COURT:  All right.  Mr. Dale?
 3              MR. DALE:  No, Your Honor.
 4              THE COURT:  All right.
 5              THE DEFENDANT:  Thank you, Your Honor.
 6              THE COURT:  Good luck to you, Mr. Shriver.
 7              THE DEFENDANT:  Thank you, sir.
 8              THE COURT:  Thank you to counsel.  I appreciate the
 9   professional work that you do, and it makes my job an awful
10   lot easier.
11              MR. DALE:  Thank you, Your Honor.
12              MR. CAMPBELL:  Thank you, Your Honor.
13              THE DEFENDANT:  Thank you, Mr. Campbell.
14              THE COURT:  We are going to take a brief recess and
15   come back with our civil docket.  We're in recess.
16              ------------------------------------------------
                                HEARING CONCLUDED
17
18
19
20         I certify that the foregoing is a true and
21      accurate transcription of my stenographic notes.
22
23
                      /s/  Norman B. Linnell
24                 Norman B. Linnell, RPR, CM, VCE, FCRR
25
```